UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CCS RESOURCES, INC.,
     Plaintiff,


     v.                                    CIVIL ACTION NO.
                                           12-11156-RWZ

NOBLE SYSTEMS CORPORATION,
     Defendant.


**REPORT AND RECOMMENDATION RE:**
**MOTION TO VACATE OR MODIFY FIRST EXECUTION**
**AND FOR DETERMINATION OF AMOUNT OWED THEREUNDER**
**(DOCKET ENTRY # 51)**

**MEMORANDUM AND ORDER RE:**
**MOTION FOR SANCTIONS BY DEFENDANT NOBLE SYSTEMS**
**CORPORATION (DOCKET ENTRY # 62); MOTION FOR**
**RULE 11 SANCTIONS BY PLAINTIFF CCS RESOURCES,**
**INC. (DOCKET ENTRY # 67); MOTION FOR**
**CONTEMPT AND SANCTIONS**
**(DOCKET ENTRY # 52)**

**January 27, 2014**

**BOWLER, U.S.M.J.**

Pending before this court are the following motions:  (1) plaintiff CCS Resources, Inc.'s motion to vacate a writ of execution of an $805,990.45 final judgment and to determine the amount it owes defendant Noble Systems Corporation ("Noble") as of March 20, 2013 (Docket Entry # 51); (2) Noble's motion for sanctions under Fed.R.Civ.P. 11 ("Rule 11"), Fed.R.Civ.P. 37 ("Rule 37"), 28 U.S.C. § 1927 ("section 1927") and this court's inherent power against plaintiff CCS Resources, Inc. ("CCS") and its counsel based upon their misconduct in refusing to pay the

judgment until March 20, 2013 (Docket Entry # 62); (3) CCS's
motion for sanctions under Rule 11 against Noble and its counsel
for filing the foregoing motion for sanctions (Docket Entry #
67); and (4) CCS's motion for civil contempt and sanctions
against Noble and its counsel because Noble filed certain
confidential documents subject to a protective order in this case
in an action Noble filed to register the judgment in New
Hampshire Superior Court (Rockingham County), <u>Noble Systems
Corporation v. CCS Resources, Inc.</u>, Civil Action No. 218-2013-
00245 ("the New Hampshire action") (Docket Entry # 52).  After
conducting a hearing, this court took the motions (Docket Entry
## 51, 52, 62 & 67) under advisement.

<u>BACKGROUND</u>

CCS filed this action to confirm in part and modify in part
an arbitration award.  The dispute between the parties arises out
of a contract between Noble and CCS.

In April 2010, CCS, which operates call centers in
Massachusetts, New Hampshire and Maine, entered into the contract
with Noble, a vendor of dialing systems.  Under the contract,
Noble agreed to sell and license hardware and software involving
a Noble dialing system to CCS.  CCS agreed to have Noble install
the system and provide hardware and software support.  The
contract included a choice of law clause dictating the
application of Georgia law to the agreement.  It also contained

an arbitration clause requiring that any controversy relating to the agreement "shall be settled by final and binding arbitration" and that "judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof." (Docket Entry # 1-2).

A.  <u>Arbitration and Prejudgment Interest</u>

In February 2011, the parties proceeded to arbitration to resolve a number of disputes that arose under the contract. The Arbitrator issued three interim awards on February 21, April 30 and May 18, 2012. On June 1, 2012, he issued a final award that incorporated all of the interim awards.

The first award included a damages award of more than $800,000 to Noble. The Arbitrator rejected Noble's claim for attorneys' fees. The second award addressed the issue of prejudgment interest. The amount of prejudgment interest is the subject of the pending motion to vacate.

Applying a Georgia statute, the Arbitrator awarded Noble 7% prejudgment interest. The cited statute provides that, "In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery." Ga. Code Ann. § 13-6-13; <u>see</u> <u>also</u> <u>Chacon v. Holcombe</u>, 660 S.E.2d 851, 852-853 (Ga.App. 2008) ("jury was authorized by OCGA § 13-6-13 to increase the $24,698.39 in breach of contract damages by adding

prejudgment legal interest to the damages at the rate of seven percent per annum simple interest from the date of the breach"); Ga. Code Ann. § 7-4-2(a)(1)(A) ("legal rate of interest shall be 7 percent per annum simple interest where the rate percent is not established by written contract").

The final award carried forward the prejudgment interest finding.  It also provided the basis for the final judgment in this action.  Paragraph two of the five paragraph final award reads as follows:

> 2.  Within thirty (30) days after the date of transmittal of this Final Award to the parties, CCS shall pay to Noble the total sum of Eight Hundred Five Thousand Nine Hundred Ninety Dollars and 45/00 ($805,990.45), together with interest, as follows:
>
> • $290,454 for the purchase price;
>
> • $471,410.66 for support payments based upon the language of the Agreement Addendum A, page 5.  CCS is not entitled to reduce any part of this payment to present value, nor is it entitled to pay any portion over time;
>
> • $44,125.79 for prejudgment interest (at the rate of 7%) as of June 1, 2012, *and accruing thereafter at the daily rate of $103.11.*

(Docket Entry # 1-1) (emphasis added).  The $805,990.45 figure equals the total of the damages figures in the bullet points ($290,454, $471,410.66 and $44,125.79) but does not include the $103.11 daily amount of prejudgment interest accruing after June 1, 2012.

On June 28, 2012, a few weeks after the final award, CCS filed this action.  The complaint seeks to confirm the

arbitration award under the Federal Arbitration Act, 9 U.S.C. §§ 9-11, except for the language in paragraph two that reads, "Within thirty (30) days after the date of transmittal of this Final Award to the parties." (Docket Entry # 1). The request for relief at the conclusion of the complaint moves for an order confirming the June 1, 2012 final award and either vacating or striking the foregoing language requiring payment in 30 days ("the disputed portion").

Wishing to resolve the matter, Noble filed an answer on July 3, 2012, admitting to the allegations in the complaint and consenting to the request for relief.[1] On July 24, 2012, it filed a motion for judgment on the pleadings. (Docket Entry # 11). CCS did not object to the substance of the motion but did object to Noble's characterization of the Local Rule 7.1(A)(2) conference with CCS's counsel.[2] (Docket Entry # 13). Neither party sought or challenged the Arbitrator's prejudgment interest award in the daily amount of $103.11.

The motion for judgment on the pleadings attached a proposed

---

[1]  Noble did not agree to footnote one in the complaint.

[2]  In seeking sanctions, Noble therefore argues that:

[CCS] refused to agree to a consent judgment for the very relief [CCS] had sought.  As a result, Noble was required to expend time and expense preparing a motion for judgment on the pleadings, requesting the very relief demanded by [CCS] in the complaint.

(Docket Entry # 63).

final judgment.  The proposed judgment recited the terms of paragraph two but omitted not only the disputed portion but also the prejudgment interest language in the third bullet point that reads, "and accruing thereafter at the daily rate of $103.11." (Docket Entry # 12, Ex. A).  On October 16, 2012, the district judge allowed the motion for judgment on the pleadings and issued the final judgment in the exact form submitted by Noble, albeit crossing out the word "PROPOSED" in the caption.  (Docket Entry # 17).  The final judgment states:

> The Court, having considered all the pleadings in this action hereby ORDERS AND ADJUDGES as follows:
>
> 1. The Final Award issued on June 1, 2012 by R. Wayne Thorpe of JAMS in Atlanta, Georgia, is hereby confirmed, with the exception of the provision in Paragraph 2 on page 2 of the Final Award which states: "[w]ithin thirty (30) days after the date of transmittal of this Final Award to the parties." That portion of the Final Award is vacated.
>
> 2. Judgment is entered for Defendant, Noble Systems Corporation against Plaintiff, CCS Resources, Inc., in the amount of the Final Award of $805,990.45, together with postjudgment interest at the rate provided by law.

(Docket Entry # 17).  By letter dated November 2, 2012, Noble made an "official demand" to CCS to pay the $805,990.45 final judgment plus postjudgment interest.[3]  (Docket Entry # 23-3).

On October 30, 2012, Noble filed and a Deputy Clerk signed a writ of execution on the judgment.  (Docket Entry # 18).  The

---

[3]  The letter requests payment in full by November 12, 2012. During a November 13, 2012 conference call between counsel, CCS's counsel expressed doubt about whether CCS could immediately pay the entire judgment.

writ authorized the seizure of CCS's assets to satisfy damages in
the amount of $805,990.45, prejudgment interest in the amount of
$58,148.75 and an amount reflecting 12% interest from the
rendition of the judgment.[4]  The $58,148.75 amount is not the
amount of prejudgment interest that accrued from June 1 to
October 16, 2012, at the daily rate of $103.11.  The latter
amount totals $14,126.07 (137 days x $103.11).  See Fed.R.Civ.P.
6(a).

The writ of execution also directed the Marshal or Deputy
Marshal "to satisfy yourself of your own fees."[5]  (Docket Entry #
18).  On March 20, 2013, two Deputy Marshals commenced a levy of
CCS's property which led to CCS's payment of $806,812.56 on the
same day.

B.  Collection Efforts and Discovery[6]

Collecting the $805,990.45 in the arbitration award and the
final judgment proved difficult.  Noble's collection efforts
began two days after the June 1, 2012 final arbitration award.

---

[4]  The parties agree that postjudgment interest at the
federal statutory rate of .17% applies as opposed to the 12%
interest rate in the writ.  Noble acknowledges that the
$58,148.75 was a mistake.  (Docket Entry # 60).

[5]  As explained infra, CCS agrees to pay the Marshal's fees
($671) but does not agree to pay the cost of a moving company
($864) used during the March 20, 2013 levy of its assets.

[6]  The sanctions motions involve the merits of various
filings, Noble's collection efforts and CCS's alleged use of
discovery to avoid paying the final judgment.  (Docket Entry ##
52, 62 & 67).

On that day, Noble's counsel emailed CCS's counsel and inquired about CCS's payment of the judgment.  CCS's counsel responded a few days later that he would get back to Noble's counsel "shortly."  (Docket Entry # 63-1).  Instead of responding to the email, CCS filed this action on June 28, 2012.

On July 9, 2012, three businesses closely affiliated with CCS (Credit Control Services, CCS Commercial, LLC and Enterprise Associates ("the CCS entities") filed suit in Massachusetts Superior Court (Middlesex County) against Noble.  The 13 count complaint alleges liability on the basis that the CCS entities were third party beneficiaries of the April 2010 contract between CCS and Noble.  The complaint also outlines that the CCS entities and CCS are located at the same address and under the common control of CCS Global Holdings, Inc. ("Global").  Noble timely removed the action to the United States District Count, District of Massachusetts.  In March 2013 the court allowed a motion for judgment on the pleadings, dismissed the action on the basis of claim preclusion and explained that, "The CCS Companies cannot avoid the arbitrator's adverse determination simply by dispatching differently named affiliates to prosecute the same dispute.  The earlier arbitration bars this proceeding." <u>Credit Control Services, CCS Commercial, LLC and Enterprise Associates v. Noble Systems Corporation</u>, Civil Action No. 12-11321-JLT ("the Massachusetts action") (Docket Entry # 36).  The court also

stated that CCS "arbitrated on behalf of all of the CCS Companies." Id.

On July 24, 2012, Noble filed the aforementioned motion for judgment on the pleadings in this action. After the court entered the final judgment on October 16, 2012, Noble served CCS with a Fed.R.Civ.P. 30(b)(6) ("Rule 30(b)(6)") deposition notice seeking to obtain information about its financial assets and ability to pay the judgment. Noble also served deposition notices to the CCS entities, Global and Customer Contact Solutions, LLC ("CCSL") in an effort to discover CCS's assets.

On November 8, 2012, CCS filed a motion agreeing to make a Rule 30(b)(6) deponent available, albeit not on the December 14, 2013 designated date, and seeking to quash the deposition notices of the other entities. (Docket Entry # 20). CCS argued against deposing the CCS entities, Global and CCSL because they were not related to CCS[7] and there was an absence of evidence of fraudulent transfers between CCS and these corporate entities. (Docket Entry # 21) (citing Evans v. Multicon Construction Corp., 574 N.E.2d 395 (Mass.App.Ct. 1991)). This court undeniably had the authority to order the discovery under the circumstances presented. See Lumber Liquidators, Inc. v. Sullivan, 939 F.Supp.2d 57, 59-60 (D.Mass. 2013) (noting that Fed.R.Civ.P. 69

---

[7] The court's finding in the Massachusetts action weakens this argument.

affords "[l]iberal discovery" and that judgment creditor "'may obtain discovery from any person'" in aid of judgment or execution) (quoting ClearOne Communications, Inc. v. Chiang, 276 F.R.D. 402, 404 (D.Mass. 2011)).[8]   The Lumber Liquidators court upheld subpoenas seeking documents from credit departments of third party entities related to the judgment debtor.  Similar to the alleged circumstances in the case at bar, the judgment debtor in Lumber Liquidators took "steps to prevent [the judgment creditor] from collecting monetary damages awarded to it" in an arbitration award by "1) the placement in trust of his ownership stake in [a related entity] and 2) the obfuscation of his continued participation in that business."  Id. at 60.  CCS's argument that Noble should depose CCS before deposing the other entities was nonetheless well taken.  See Fed.R.Civ.P. 26(b)(2)(C)(i).  Ultimately, this court allowed the motion to quash the deposition notices of the CCS entities, Global and CCSL (Docket Entry # 20) because of CCS's $806,812.56 payment in March 2013 to Noble.

With CCS continuing to refuse immediate payment of the final judgment, on November 27, 2012, Noble filed a motion seeking a postjudgment attachment by trustee process of a CCS bank account. (Docket Entry # 23).  CCS's opposition presented a weak but non-

---

[8]   In opposing the motion to quash, Noble cited to ClearOne, 276 F.R.D. at 404.  (Docket Entry # 22).

frivolous argument that trustee process applied only at the commencement of suit in light of the language of two Massachusetts statutes and Mass.R.Civ.P. 4.2.  (Docket Entry # 28).  Noble's position was also well supported on a factual and a legal basis and made in good faith.[9]

Noble simultaneously sought supplementary process and a hearing to examine CCS's assets and ability to pay the judgment. (Docket Entry # 24).  CCS's argument that this court lacked jurisdiction to conduct the proceeding (Docket Entry # 25) has a modicum of support in the statutory language, see Mass. Gen. Law

---

[9]  In particular, under Massachusetts law, postjudgment attachment of "bank accounts takes place by trustee process." Gabovitch v. Lundy, 584 F.2d  559, 561 (1st Cir. 1978); see also Lowel-Light Manufacturing, Inc. v. Federal Deposit Insurance Corporation, 848 F.Supp. 278, 280 & 282 (D.Mass. 1994) (writ of execution obtained by judgment creditor against bank holding assets of defaulted defendant did not create lien because judgment creditor must proceed by trustee process); accord Latorraca v. Taniki Financial Corp., 2010 WL 3245365, *2 (1st Cir. Aug. 10, 2010) ("'there appears to be no prohibition against a plaintiff seeking approval of a trustee attachment after judgment has entered'") (citing Massachusetts treatise); Fed.R.App.Pro. 32.1.  Thus, even though Massachusetts Rules of Civil Procedure and state statutes allow for ex parte trustee attachment at the commencement of a civil action, they do not foreclose the use of such process postjudgment.  See Commercial Printers of Connecticut, Inc. v. Letter-Men Publishing Company, 1998 WL 45402 at * 1-3 (D.Mass. May 5, 1988).

The viability of the arguments is relevant to the motions for sanctions.  This court did not reach the merits of the motion for an attachment by trustee process (Docket Entry # 23) and, instead, denied it as moot in light of the March 2013 payment by CCS.

ch. 224, § 6, but Noble's position was also well supported.[10]
See United States v. Timilty, 148 F.3d 1, 5 (1st Cir. 1998) ("it
is appropriate for the government to seek the hearing provided")
(discussing Mass. Gen. Laws ch. 224, § 14); see, e.g., Board of
Commissioner's of Stark County, OH v. Cape Stone Works, Inc., 206
F.Supp.2d 100, 105 (D.Mass. 2002); 48 Jordan L. Shapiro, Marc G.
Perlin & John M. Connors Massachusetts Practice § 10:5 (3rd ed.
2000) ("procedures applicable in supplementary process actions in
Massachusetts state courts may also be used in the United States
District Court in Massachusetts").

On November 30, 2012, CCS filed a motion seeking to strike,
redact or impound portions of Noble's opposition to CCS's motion
to quash the deposition notices because the opposition disclosed
material that was subject to a nondisclosure agreement between
CCS and Noble. (Docket Entry # 31). This court allowed the
motion and directed the Clerk to place the opposition and the
exhibits under seal. CCS filed the motion to strike even though
Noble agreed to impound or seal the documents at issue as long
the requirement to protect confidential information applied
equally to both parties. (Docket Entry # 35-1).

Meanwhile, the parties set a revised date for the Rule

---

[10] This court did not reach the merits of the motion
(Docket Entry # 24) and, instead, denied it as moot in light of
the March 2013 payment and placement of an additional disputed
amount in escrow.

30(b)(6) deposition of January 23, 2013.  The accompanying
subpoena duces tecum requested more than 30 categories of
documents dating back to January 1, 2009.  The requested
documents included CCS tax returns, financial statements,
ledgers, monthly profit and loss statements, bank and brokerage
account statements, savings accounts, certificates of deposit and
other financial accounts, promissory notes, appraisals of real
and personal property, documents reflecting the organizational
chart of the CCS entities as well as CCSL and Global, documents
reflecting inter-corporate transfers among these entities and
documents regarding assets with a value in excess of $5,000.  The
designated topics consisted of "all  financial matters" of CCS
and "all matters relating to" the requested documents.  (Docket
Entry # 21-1, Ex. B) (capitalization omitted).

On January 16, 2013, CCS's counsel delivered various
documents responsive to the deposition subpoena duces tecum to
Noble's counsel.  The next day, CCS designated Jay Webber
("Webber"), an accountant who had performed audits of CCS and its
affiliates, as the Rule 30(b)(6) deponent.  In an email the same
day, Noble's counsel reminded CCS's counsel about the obligation
to provide a Rule 30(b)(6) deponent capable of answering
questions "related to finances and collection."  (Docket Entry #
63-2).

At the January 23, 2013 deposition, Webber was unable to

13

answer whether CCS had the financial assets to pay the judgment
and he did not know whether CCS had the assets in February 2012
to pay the first interim arbitration award.  He could not
determine whether a number of the financial statements produced
were complete.  He was unable to authenticate various documents
as true and correct copies of CCS corporate records although
CCS's counsel offered to stipulate to their authenticity.
Whereas the financial records showed two shareholder
distributions in May and July 2012 totaling $600,000 on CCS's
general ledger, Webber could not explain either entry including
whether "it represented a cash payment" or "something else."[11]
(Docket Entry ## 72-1 & 72-2).

As evidenced by the deposition excerpts Noble provided,
Webber was not fully prepared to testify about the financial
matters of CCS.  He did agree that various financial documents
reflected certain stated figures as described, including the
nature of the transactions such as a shareholder distribution,
and he agreed that his review of the financials and ledgers
showed that CCS affiliates paid the company money pursuant to
equipment leases.  Webber could not explain why the affiliates
stopped making the payments by the spring of 2012.  Given the
nature of Webber's testimony, the parties agreed to suspend the

---

[11]  He did testify that it would have stood out to him when
looking at those financials and would be a part of his audit
work.

deposition and, on February 12, 2013, Noble noticed a second Rule 30(b)(6) deposition for March 6, 2013.  (Docket Entry # 68-2).

In January 2013, this court entered a stipulated protective order.  On February 5, 2013, Noble filed an "assented to" motion to place two filings under seal.  Two days later, Noble filed a statement clarifying that CCS did not assent to the motion to file the documents under seal.[12]

Because 2012 financial records of CCS revealed a lack of sufficient cash to pay the judgment, Noble decided to proceed against CCS's hard assets.  CCS possessed hard assets in Newton, Massachusetts and Portsmouth, New Hampshire.  On February 27, 2013, Noble registered the judgment in New Hampshire Superior Court (Rockingham County).  (Docket Entry # 59-1).  In response, CCS filed a motion to stay the enforcement of the judgment. (Docket Entry # 59-3).  By courier on March 19, 2013, Noble sent an opposition to the motion with exhibits, an envelope and a cover letter to the Clerk.  The exhibits included financial documents obtained by Noble in this case and designated confidential by CCS.  The cover letter from Noble asked the Clerk

---

[12]   In opposing Noble's motion for sanctions, CCS describes these filings as "<u>two</u> wasteful papers" and that Noble "wilfully filed" the motion to seal "as assented to" when it "was <u>not</u> assented-to . . .."  (Docket Entry # 66).  CCS also bases its Rule 11 motion for sanctions on these filings.  (Docket Entry # 68).  CCS's position is misguided in light of the protective order and correspondence between counsel (Docket Entry # 40, Ex. A & B).  The nature of the error was, at most, an oversight.

in bold to place the filing under seal in light of the protective
order entered in this case.[13]

On March 20, 2013, Noble commenced the levy against CCS's
assets in Newton, Massachusetts.  Two Deputy United States
Marshals arrived at CCS's Newton headquarters along with a moving
van and four movers from a local moving company.  The Deputy
Marshals served the writ of execution on CCS's General Counsel
and, within hours, CCS wired $806,812.56 to Noble and agreed to
place an additional sum of $102,366.64 in an escrow account.  The
$806,812.56 figure consists of the judgment ($805,990.24) plus
postjudgment interest ($822.11) on that amount at the applicable
federal interest rate (0.17%) from the date of the judgment
(October 16, 2012) through the date of the payment (March 20,
2013).  The $102,366.64 figure includes the disputed amount of
prejudgment interest for June 1 to October 16, 2012
($14,126.07);[14] the disputed moving company charges ($864), the
undisputed United States Marshal fees ($671) and the additional
postjudgment interest on the increased amount of the judgment

---

[13]  CCS seeks a civil contempt finding against Noble partly
because, even though Noble asked the Clerk to seal the documents,
Noble violated the protective order in this case because the
documents "were not actually filed under seal."  (Docket Entry #
52).

[14]  Noble only seeks $14,022.96 in prejudgment interest for
this time period.  In other words, Noble calculates the accrued
prejudgment interest at the daily rate of $103.11 for 136 days as
opposed to the actual 137 days.  See Fed.R.Civ.P. 6(a)(1).

when it includes prejudgment interest.

The $102,366.64 amount therefore exceeds the funds presently sought by Noble.  According to CCS, when it pointed out the inclusion of the excess amount, Noble "refunded more than $86,000 to CCS."  (Docket Entry # 68).  CCS represents and Noble does not dispute that the amount of money in the escrow account at present is $15,557.96.

I.  Motion to Vacate or Modify First Execution

CCS moves to vacate or modify the writ of execution because it includes prejudgment interest ($58,148.75) that conflicts with the final judgment.  (Docket Entry # 51).  The final judgment awarded $805,990.45 but did not include any additional award for prejudgment interest.  The judgment only awarded the additional sum of "post-judgment interest at the rate provided by law." (Docket Entry # 17).  CCS therefore seeks to adhere to the amounts in the final judgment and enforce the judgment.  It also moves for a determination of the amount it owes Noble as of March 20, 2013.

Noble agrees with CCS that the postjudgment rate of interest is .17% and that this rate applies from October 16, 2012 to March 20, 2013.  (Docket Entry # 60).  Noble otherwise disagrees with CCS's position.

First, Noble wants to add $14,022.96 of prejudgment interest that purportedly accrued from June 1 to October 16, 2012, at the

daily rate of $103.11.  Noble submits it is entitled to
$14,022.96 in prejudgment interest because the Arbitrator awarded
it and the complaint only sought to strike the obligation of CCS
to pay the award in 30 days.  Noble also points out, correctly,
that the $805,990.45 figure in the final award by the Arbitrator
included pre-award prejudgment interest of $44,125.79.[15]  Noble
therefore reasons that the final judgment includes $44,125.79 of
prejudgment interest and it was only a scribe's error to omit the
$103.11 daily rate of post-award prejudgment interest that
accrued after June 1, 2012.  Because the final judgment did not
expressly refer to prejudgment interest, Noble also submits that
it did not waive the issue of prejudgment interest.  Noble also
moves to modify the writ of execution by reducing the $58,148.75
amount to $14,022.96 under Fed.R.Civ.P. 60(a) ("Rule 60(a)").
Whereas Noble does not formally request relief from the final
judgment, the substance of the argument is a request to add
$14,022.96 in prejudgment interest to the final judgment under
Rule 60(a) or (b).

Second, Noble seeks to calculate postjudgment interest on
the amount of the judgment ($805,990.45) plus the amount of the
post-award prejudgment interest ($14,022.96).  Third, Noble

---

[15]  The Arbitrator awarded $44,125.79 of prejudgment
interest calculated at the 7% statutory rate up to the June 1,
2012 date of the final award.  The $805,990.45 figure in the
final award included this prejudgment interest.

contends CCS is responsible for the $864 mover's fee because the writ of execution commands the Marshal or Deputy Marshal "to satisfy yourself for your own fees."  (Docket Entry ## 18 & 60).

## DISCUSSION

Rule 60(a) allows a court to correct clerical mistakes arising from omissions "in a judgment, order, or other part of the record."  Fed.R.Civ.P. 60(a).  "'The relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties or is instead a clerical, or a copying or computational mistake, which is correctable under the Rule.'"  Bowen Inv., Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007).

In contrast, when a postjudgment motion involves a request for prejudgment interest, Rule 59(e) provides the appropriate avenue for relief.  See In re Redondo Const. Corp., 678 F.3d 115, 122 (1st Cir. 2012).  As explained by the First Circuit in Redondo, "[W]e regularly have recognized that Rule 59(e) is an appropriate vehicle for the resolution of disputes about prejudgment interest."  Id. (collecting case law); see Crowe v. Bolduc, 365 F.3d 86, 92-93 (1st Cir. 2004) ("Rule 59(e) is the proper procedural vehicle for motions seeking to revise a judgment to include an initial award of prejudgment interest").  Even when an award of prejudgment interest is mandatory or a matter of right, Rule 59(e) is the procedural vehicle to

19

accomplish the correction.  See Crowe v. Bolduc, 365 F.3d at 90-
91.  "'[M]andatory prejudgment interest, no less than
discretionary prejudgment interest, serves to "remedy the injury
giving rise to the underlying action," and in that sense is part
of the merits of the district court's decision.'"  Crowe v.
Bolduc, 365 F.3d at 92 (quoting Osterneck v. Ernst & Whitney, 489
U.S. 169, 176 n.3  (1989)) (internal brackets omitted).

    In the case at bar, two alleged mistakes are at issue.  One
consists of the omission in the final judgment of post-award
prejudgment interest in the daily amount of $103.11 from June 1
to October 16, 2012.  Noble correctly maintains it was entitled
to an award of the post-award prejudgment interest.  The
Arbitrator awarded it based on a Georgia prejudgment interest
statute and neither party challenged this aspect of the award.
See generally Ramos-Santiago v. United Parcel Service, 524 F.3d
120, 123 (1st Cir. 2008) (review of an arbitration award by a
federal court "is '"extremely narrow and exceedingly
deferential"'"); accord Union Pac. R.R. v. Sheehan, 439 U.S. 89,
91 (1978) (per curium) (scope of review of arbitration award is
"among the narrowest known to the law") (internal quotation marks
omitted).  Like the omission of mandatory prejudgment interest
under a state statute, the post-award prejudgment interest award
was mandatory and the final judgment should have included it.  As
was the case in Crowe, however, it was incumbent upon Noble to

properly preserve its entitlement to the award by seeking relief under Rule 59(e) as opposed to Rule 60(a).[16]  <u>See</u> <u>Crowe v. Bolduc</u>, 365 F.3d at 90 (there was no "serious question that Crowe's success in <u>Crowe II</u> carried with it an entitlement to prejudgment interest so long as that entitlement was properly preserved").

Because the parties seek to correct the writ of execution, this court turns to an examination of the writ in the context of the final judgment confirming the final arbitration award.  A final judgment confirming or modifying an arbitration award, once entered, has "the same force and effect" as a judgment in a civil action.  9 U.S.C. § 13; <u>see</u> Fed.R.Civ.P. 81(a)(6)(B).  The judgment "may be enforced as if it had been rendered in an action in the court in which it is entered."  9 U.S.C. § 13.  State law applies not only to procedures in aid of execution of a judgment but also to the issuance of the writ of execution.  <u>See</u> <u>Gabovitch v. Lundy</u>, 584 F.2d 559, 560 (1st Cir. 1978); Fed.R.Civ.P. 69(a)(1).  A failure to comply with the state procedure or law invalidates the writ.  <u>See</u> <u>Gabovitch v. Lundy</u>, 584 F.2d at 560; <u>see also</u> <u>Aetna Casualty & Surety Co. v. Markarian</u>, 114 F.3d 346, 349 (1st Cir. 1997) (paraphrasing <u>Gabovitch v. Lundy</u>, 584 F.2d at 560, in parenthetical).

---

[16]  Perhaps recognizing the foregoing precedent, Noble does not expressly move to correct the final judgment to include the $14,022.96 of prejudgment interest.

In Massachusetts, as elsewhere, an execution of a judgment "is 'a process issued from a court in which a judgment has been rendered, in a civil action, for the purpose of carrying the judgment into effect.'"  Durkee v. Durkee-Mower, Inc., 428 N.E.2d 139, 142-143 (Mass. 1981); Miller v. London, 1 N.E.2d 198, 200 (Mass. 1936).  Moreover, the issuance of a writ of execution "is a ministerial act" typically performed by the Clerk.  City of Boston v. Santosuosso, 31 N.E.2d 572, 576 (Mass. 1941).  If the writ diverges from the judgment, the court may "amend an execution so that it will conform to the judgment . . .."  Id.; see Johnson v. Frye, 2005 WL 1216574, *2 (Mass.App.Div. May 18, 2005) ("the terms of any execution issued must mirror those of the underlying judgment").  An oversight by the Clerk in not transposing the correct amount of prejudgment interest from the judgment onto the writ is therefore subject to correction under Rule 60(a).[17]

Here, the final judgment awards a judgment in the amount of "$805,990.45, together with post-judgment interest at the rate

---

[17]  Massachusetts law allows a judgment creditor to obtain a writ of execution within one year of the judgment.  See Mass. Gen. L. ch. 235, § 17; 48 Jordan L. Shapiro, Marc G. Perlin and John M. Connors Massachusetts Practice: Collection Law § 9.10 (3rd ed. 2013) ("[a]n execution must be obtained from the clerk within one year after the party is first entitled to obtain the same").  Because a writ of execution does not necessarily issue at the time of the judgment, a plaintiff cannot always seek relief under Rule 59(e) from an error in transposing the correct amount in the judgment onto the writ.

provided by law." (Docket Entry # 17). Noble's brief argument without citation to legal authority that, "The judgment incorporated the Final Award by reference in Paragraph 1 and did not modify the amount of the Final Award" (Docket Entry # 60) is not adequately presented and therefore waived.[18]  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1ˢᵗ Cir. 1999) ("district court is free to disregard arguments that are not adequately developed"); see generally U.S. v. Caparotta, 676 F.3d 213, 218 (1ˢᵗ Cir. 2012) ("argument consists of just two sentences and two cursory citations in his brief" and is therefore waived).

The writ of execution is therefore incorrect.  It contains a prejudgment interest award ($58,148.75) that the final judgment on its face does not include and does not award.  As requested by CCS, the writ is therefore modified to strike the $58,148.75 amount of prejudgment interest.  In light of the parties' agreement, the postjudgment interest rate of 12% is stricken to conform to the final judgment.  The judgment awards postjudgment interest at the statutory rate provided by law, i.e., .17%.

Noble's opposition also "requests" an order that it is entitled to post-award prejudgment interest in the amount of $14,022.96.  The request does not warrant the relief Noble seeks.  First, the opposition is not in the proper form of a motion.  See

---

[18]   Noble also alluded to the argument at the hearing.

LR. 7.1.  Second, even recharacterizing the opposition as a motion seeking an award of $14,022.96 as determined by the Arbitrator, see Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 283 (1st Cir. 1993) ("[o]ur inquiry into the character of the motion is a functional one:  'nomenclature should not be exalted over substance'"); see also Aguilar v. U.S. Immigration and Customs Enforcement Division of Department of Homeland Security, 510 F.3d 1, 16 (1st Cir. 2007) ("we must discount nomenclature and follow the time-honored precept that substance trumps form"), the effect of the relief requested is to alter or amend the final judgment to include prejudgment interest.  As such, it was incumbent upon Noble to seek relief within 28 days of the judgment.  See Crowe v. Bolduc, 365 F.3d at 90-91; Fed.R.Civ.P. 59(e).  Similarly, insofar as Noble seeks to modify the writ of execution by reducing the prejudgment interest amount to $14,022.96, it is improper.  The terms of the writ of execution must follow and adhere to the amounts in the final judgment.  See City of Boston v. Santosuosso, 31 N.E.2d at 576; Johnson v. Frye, 2005 WL 1216574, at *2.  The judgment does not on its face reflect the $14,022.96 award.  Amending the writ to reflect this prejudgment interest thus initially requires an amendment to the judgment.  Noble's failure to file a timely Rule 59(e) motion therefore forecloses the relief it presently seeks to accomplish to the writ.  Finally, it is worth noting that

Noble provided the proposed final judgment with the alleged error of omitting the post-award prejudgment interest.  Noble also provided the Deputy Clerk with the proposed writ of execution that included the error of a prejudgment interest award in the amount of $58,148.75.

Turning to the $864 mover's fee, Noble argues that the writ of execution allows it to recover the fee because of the language allowing the Marshal or Deputy Marshal "to satisfy yourself for your own fees" (Docket Entry # 18).  (Docket Entry # 60).  CCS objects to paying the fee because Noble failed to document it. The bill of lading and freight bill (Docket Entry # 61-2), however, provide sufficient documentation of the $864 fee. (Docket Entry # 61-2).

A court "may tax as costs the . . . [f]ees of the clerk and marshal."  28 U.S.C. 1920; see also Fed.R.Civ.P. 54(d)(1) (costs allowed to prevailing party); 28 U.S.C. § 1921 (setting out U.S. Marshal's fees); see generally Travelers Ins. Co. v. Lawrence, 509 F.2d 83, 88 (9th Cir. 1974) ("whereas Rule 69(a) provides that state procedure shall determine what services the marshal will perform," 28 U.S.C. § 1921 "prescribes the fees he may collect for those services")  Noble is a prevailing party because the court entered a judgment "for Defendant, Noble Systems Corporation against Plaintiff, CCS Resources, Inc., in the amount of the Final Award of $805,990.45 . . . .."  (Docket Entry # 17).

25

"Under the plain language of 28 U.S.C. § 1920(1)," fees "charged by a United States Marshal under 28 U.S.C. § 1921 . . . are properly taxed as costs."  In re Ruhland, 492 B.R. 92, 96 (Bkrtcy.D.Mass. 2013).  United States Marshal fees include "actual expenses incurred, such as storage" and "moving" fees, for keeping attached property.  28 U.S.C. § 1921(a)(1). Implementing regulations unequivocally state that, "the U.S. Marshal Service shall" collect "out-of-pocket expenses" which include "storage, moving . . . and any other third-party expenditure incurred in executing process."  28 C.F.R. § 0.114. Furthermore, the "United States Marshals Service shall collect the fees . . . even when process in returned to the court or the party unexecuted, as long as service is endeavored."  28 C.F.R. § 0.114.  Thus, the fact that the parties reached an agreement after the Deputy Marshals and the movers arrived does not justify CCS's non-payment.  The amount owed as of March 20, 2013, therefore includes the $864 mover's fee.

II.  Noble's Motion for Sanctions

     Noble moves for sanctions against CCS and its counsel under section 1927, Rule 11, Rule 37 and this court's inherent power. (Docket Entry # 62).  In particular, Noble seeks a monetary amount of not less than its attorneys' fees and estimates those fees as greater than $200,000.

     Noble maintains that CCS delayed the discovery of its assets

26

and "drained its bank accounts" to avoid paying the final

arbitration award and the final judgment.  CCS's bank accounts

reflect the following activity:

> • On November 2, 2011, a few days after the final hearing in the arbitration proceeding, CCS transferred $119,687.55 to David Sands, executive vice president of CCS, and to his brother Steven Sands, president of CCS.[19]

> • On February 22, 2012, the day after the entry of the first interim award, CCS's general ledger shows a transfer of $500,000 from the company's operating account at Citizens Bank to a new investment account at UBS Financial Services Inc. although the account is under the name of CCS Resources, Inc., i.e., CCS.

> • Prior to April 30, 2012, certain CCS financial schedules show revenues from its affiliates pursuant to equipment lease agreements.  After April 30, 2012, these same documents do not show this inter-company revenue.

> • On May 10, 2012, CCS's general ledger evidences a discretionary shareholder distribution of $500,000 to Global.  The ledger shows a similarly designated shareholder distribution to Global of $100,000 on July 26, 2012.

> • CCS's 2010 general ledger contains an ending balance in the company's operating account at Citizens Bank in excess of $600,000 whereas the 2012 general ledger reflects a balance of $2,252 in this operating account.[20]

(Docket Entry # 72-1 & 72-2).  Except for the July 26, 2012

---

[19]   Corporate titles are taken from the original contract (Docket Entry # 1-2) and the process receipt and return of the writ of execution (Docket Entry # 48).

[20]   As noted above, on February 22, 2012, CCS transferred $500,000 from the operating account to the UBS account which had the account name of CCS Resources Inc., i.e., CCS.  Although an inference is permissible in light of the date, this court does not find that the transfer to an account under the name of CCS was an attempt to avoid paying the Arbitrator's interim award or the anticipated final award.

transfer, the activity largely predates the filing of the complaint.

In opposing the motion, CCS contends that Noble filed the motion solely to harass and increase CCS's litigation costs. CCS contends there is no factual or legal basis to award sanctions and proffers additional arguments with respect to the particular rule or statute allegedly violated.

A. Section 1927

Noble seeks section 1927 sanctions against both CCS and its attorney. The plain language of the statute only applies to an "attorney or other person admitted to conduct cases in any court of the United States." 28 U.S.C. § 1927. It does not apply to CCS. See Matta v. May, 118 F.3d 410, 413 (5th Cir. 1997) ("§ 1927 sanctions are, by the section's plain terms, imposed only on offending attorneys; clients may not be ordered to pay such awards"); accord Rentz v. Dynasty Apparel Industries, Inc., 556 F.3d 389, 396 n.6 (6th Cir. 2009) ("§ 1927 does not authorize the imposition of sanctions on a represented party"); Flip Side Productions, Inc. v. Jam Productions, Ltd., 843 F.2d 1024, 1035 n.12 (7th Cir. 1988) (section 1927 "provides only for the imposition of sanctions against counsel"). Sanctions against CCS under section 1927 are therefore not appropriate.

The statute authorizes sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and

vexatiously."   28 U.S.C. § 1927.   The attorney's  misconduct "must multiply the proceedings and be 'unreasonable and vexatious' to warrant the imposition of sanctions." <u>Cruz v. Savage</u>, 896 F.2d 626, 631 (1st Cir. 1990).   An attorney's litigation conduct is "'vexatious' if it is 'harassing or annoying, regardless of whether it is intended to be so.'" <u>Lamboy-Ortiz v. Ortiz-Velez</u>, 630 F.3d 228, 245 (1st Cir. 2010) (quoting <u>Cruz v. Savage</u>, 896 F.2d at 632).   To warrant sanctions, an attorney's conduct should display "a serious and studied disregard for the orderly process of justice," <u>Rossello-Gonzalez v. Acevedo-Vila</u>, 483 F.3d 1, 7 (1st Cir. 2007) (internal quotation marks omitted), "or add up to a reckless breach of the lawyer's obligations as an officer of the court." <u>Jensen v. Phillips Screw Co.</u>, 546 F.3d 59, 64 (1st Cir. 2008).   Although "[b]ad faith is not an essential element" to award sanctions, "a finding of bad faith is usually a telltale indicium of sanctionable conduct" under section 1927.  <u>Id.</u>

The "plain language" of section 1927 addresses "unreasonable multiplication, and not commencement, of proceedings." <u>Ji v. Bose Corp.</u>, 626 F.3d 116, 129 (1st Cir. 2010).   "Commencing a proceeding is not the same as multiplying a proceeding." <u>Jensen v. Phillips Screw Co.</u>, 546 F.3d at 65.   In other words, sanctionable conduct under section 1927 "must have an effect on an already initiated proceeding."  <u>Id.</u>   In denying section 1927

29

sanctions for the conduct of enlisting an improvident class representative before commencing suit, the First Circuit in Jensen "join[ed] an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an action." Id. An award of sanctions under section 1927 for the misconduct of not immediately paying the final arbitration award before filing the June 28, 2012 complaint is therefore foreclosed under the statute's language. Likewise, sanctions in the form of attorneys' fees to respond to the complaint are inadvisable. At that point, CCS's counsel had not multiplied the proceedings and, alternatively, had not multiplied the proceedings unreasonably and vexatiously. Rather, CCS's counsel was seeking additional time to pay the final award beyond the 30 day period.

Noble's attempt to impose section 1927 sanctions for the transgressions of CCS in avoiding payment of the final arbitration award by making loans and manipulating its balance sheet is also misguided. Section 1927 only prescribes sanctions against an attorney who "multiplies the proceedings in any case." 28 U.S.C. § 1927. The majority of the financial improprieties took place outside the context of the proceedings in this case and well before the filing of this case. While they may provide a basis to infer a motive on the part of CCS to avoid payment, which this court considers, see Jensen v. Phillips Acrew Co., 546

30

F.3d at 65-66 (if counsel "knew or should have known of Jensen's weaknesses as a lead plaintiff, those weaknesses may inform the question of whether [counsel] was guilty down the line of unreasonably and vexatiously multiplying the proceedings"), they do not provide a basis to impose sanctions on CCS's attorney based on the filing of the complaint on June 28, 2012. The filing did not multiply the proceedings within the meaning of section 1927. In the alternative, the record does not sufficiently establish CCS's counsel involvement in the financial efforts, if any, by CCS to avoid paying the final award let alone counsel's involvement in multiplying these proceedings because of it.

Turning to the filing of the motion for judgment on the pleadings, CCS's counsel and Noble's counsel held a Local Rule 7.1(A) conference the day before Noble filed the motion. (Docket Entry ## 11 & 13). In a "limited opposition," CCS's counsel stated that CCS "does not affirmatively assent to Noble's motion, neither does it oppose the motion other than set forth herein." (Docket Entry # 13). The opposition objected to the nature of Noble's characterizations of CCS's counsel's statements during the conference. The substance of the objection evidenced a strained relationship between counsel but it did not multiply these proceedings vexatiously or unreasonably. The opposition did not oppose the merits of the motion and, as a result, the

31

district judge summarily allowed the motion and entered the final judgment.

Shortly after entry of the final judgment, CCS's counsel expressed doubt about the ability of his client to make an immediate payment of the final judgment in full.  He also filed the motion to quash the deposition notices of the CCS entities, Global and CCSL and to reschedule the Rule 30(b)(6) deposition of CCS.  Given the surrounding circumstances, including the Massachusetts action and the prompt payment of the full amount on March 20, 2013, the conduct of CCS's counsel might raise a suspicion that he was simply prolonging these proceedings unreasonably.  The conduct however falls short of establishing a serious and studied disregard of the process.  On balance, this court does not find that CCS's counsel's expression of doubt about immediate payment in full was a false statement or that counsel otherwise prolonged or multiplied these proceedings.

CCS's counsel's subsequent conduct is equivocal.  He allowed the Rule 30(b)(6) deposition to go forward although the proffered deponent was not prepared to answer all of the questions posed. Counsel agreed to suspend the deposition for a later date and presumably proffer one or more deponents with greater knowledge about the designated topics and the subpoenaed documents than Webber.  As previously discussed, the majority of CCS's filings had a modicum of legal support.  These filings include the

oppositions to the motions seeking supplementary process and postjudgment attachment by trustee process. In addition, CCS and its counsel provided some financial documents in response to the subpoena duces tecum for the rescheduled January 23, 2013 Rule 30(b)(6) deposition. CCS's counsel did not prolong these proceedings by repeatedly flouting court orders or filing frivolous motions. See Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d at 7 (denying section 1927 sanctions while noting absence of allegation "of duplicative motions being filed or repeated refusals to comply with court orders").

In sum, viewing the record as whole, section 1927 sanctions are not warranted. See generally Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d at 246 (listing "types of litigation conduct" deemed "vexatious and unreasonable"); Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d at 7 (affording "'extraordinary deference to district court's decision to deny sanctions'" under section 1927).

B. Rule 11

In seeking sanctions under Rule 11, Noble acknowledges that it did not wait the required 21 days before filing the motion. See Fed.R.Civ.P. 11(c)(2). It submits that waiting 21 days for CCS to withdraw "the offending pleadings" became moot upon payment and that this court may on its own initiative order CCS and its attorney to show cause why Rule 11 sanctions are not warranted. (Docket Entry # 63, pp. 13-14).

33

Noble's failure to adhere to the procedural requirements of Rule 11(c) forecloses an award of sanctions payable to Noble. Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d at 244-245 n.27. "Rule 11 motions are governed by carefully wrought procedures designed to 'stress the seriousness of a motion for sanctions.'" Id. The Rule 11 movant must file a Rule 11 motion "separately from any other motion," Fed.R.Civ.P. 11(c)(2), and serve the "motion on opposing counsel at least twenty-one days prior to filing with the court so as to provide the adversary time to withdraw the challenged paper, claim, contention, or defense." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d at 244; Fed.R.Civ.P. 11(c)(2).

With respect to issuance of a show cause order, an award based upon such an order is typically "payable to the court alone." Id. at n.27. Here, the record does not justify Rule 11 sanctions or a show cause order under Rule 11(c)(3). Rule 11 "applies only to written papers filed with or submitted to the court, and does not govern the conduct of litigation more generally." Id. at 245. Noble's overarching argument that CCS engaged in a scheme to delay and repeatedly avoid paying the judgment is not grounded upon a written filing. Similarly, the argument that CCS depleted the company of assets to avoid payment is based on conduct that took place outside the realm of a "pleading, written motion, and other paper," Fed.R.Civ.P. 11(b), filed with the court.

34

With respect to written filings, the rule authorizes "sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." CQ Intern. Co., Inc. v. Rochem Intern., Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011); see Fed.R.Civ.P. 11(b). For reasons already explained, CCS's written filings themselves were neither frivolous nor unfounded. They were also not presented for an improper purpose within the meaning of Rule 11(b)(1). See generally Obert v. Republic Western Ins. Co., 398 F.3d 138, 147 (1st Cir. 2005) ("[b]ecause there were no proven lies, we think that the Rule 11 findings cannot stand even through we agree that the motion was objectively hopeless"). Accordingly, neither Rule 11 sanctions nor a show cause order under Rule 11(c)(3) are warranted.

C.  Rule 37

Noble next requests sanctions under Rule 37(d)(1)(A)(i) because of CCS's failure to produce a competent Rule 30(b)(6) witness. "[S]anctions for non-appearance are only available when a deponent '"literally fails to show up for a deposition session."'" Baker v. St. Paul Travelers Ins. Co., 670 F.3d 119, 124 (1st Cir. 2012) (quoting R.W. International Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 n.2 (1st Cir. 1991)). Unlike the deponent in Resolution Trust Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993), a decision addressed by the First Circuit in

35

Baker, Webber did not uniformly answer a series of questions disavowing any knowledge about the noticed areas of inquiry.  See Baker v. St. Paul Travelers Ins. Co., 670 F.3d at 124 (discussing and distinguishing Resolution Trust, 985 F.2d at 197).  Webber had minimal knowledge in certain areas and responded to a number of questions but not to other questions.  At times, he offered to look at the documents produced under the subpoena duces tecum and he identified a number of documents at the deposition.  Accordingly, even if the First Circuit adhered to a constructive non-appearance theory, the facts do not support its application.

D.   Inherent Power

     As a final matter, Noble moves for an award of attorneys' fees under the inherent power of this court.  CCS denies that it or its counsel engaged in a deliberate course of conduct to avoid paying the judgment.  CCS points out that it filed the complaint to confirm the arbitration award and that it was Noble that waited five months to serve the writ of execution and initiate the levy.

     It is well settled that federal courts have the power to award attorneys' "fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" RTR Technologies, Inc. v. Helming, 707 F.3d 84, 94 (1st Cir. 2013); accord Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240,

247 (1975).  "'The term "vexatious" means that the losing party's actions were "frivolous, unreasonable, or without foundation."'" Local 285, Service Employees Intern. Union, AFL-CIO v. Nonotuck Resource Associates, Inc., 64 F.3d 735, 737-738 (1st Cir. 1995) (addressing award of sanctions under court's inherent power). "Because of its potency," the authority to impose sanctions under a court's inherent power is exercised "'"sparingly and reserved for egregious circumstances."'" F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico, 563 F.3d 1, 6 (1st Cir. 2009) (quoting Whitney Bros. Co. v. Sprafkin, 60 F.3d 8, 13 (1st Cir. 1995)).  Such "power cannot be used to chill vigorous but legitimate advocacy." U.S. v. Figueroa-Arenas, 292 F.3d 276, 279 (1st Cir. 2002) (citing Kale v. Combined Ins. Co., 861 F.2d 746, 760 (1st Cir. 1988)).

Noble bears the burden to show that CCS and/or its counsel acted in a manner to warrant sanctions. See F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico, 563 F.3d at 3 ("court could not issue a sanctions order unless FAC had met its burden of showing COSVI had 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'").  Finally, a sanctions award serves "the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" Chambers v.

NASCO, Inc., 501 U.S. at 46.

As previously explained in denying section 1927 sanctions and in the background section, CCS's filings were weak but not frivolous or without foundation.[21]  CCS's counsel did not disobey or block a court order to attach the CCS bank account by trustee process for the simple reason that this court did not issue such an order prior to the March 2013 payment.  See generally Id. (a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order").  Neither CCS nor its counsel unduly delayed discovery in this litigation.  CCS and its counsel made weak but not frivolous arguments to avoid supplementary process and an attachment by trustee process but such aggressive advocacy does not warrant engaging the inherent authority of this court.  See U.S. v. Figueroa-Arenas, 292 F.3d at 279.  In light of CCS's finances in November 2012, CCS's counsel expressed legitimate doubt about the company's ability to make an immediate payment of the judgment in full.  The statement was not necessarily untrue even considering the payment in full on March 20, 2013.  Neither CCS nor its counsel were acting in

---

[21]  Noble does not argue that the complaint is frivolous or unfounded because it had no basis in law given the narrow grounds for challenging an arbitration award.  Instead, Noble admitted to the allegations, including the allegation that the Arbitrator exceeded his authority by instituting the payment time frame.  Hence, the issue is waived and therefore not addressed as a basis to award sanctions under this court's inherent power.  See O'Connell v. Marrero-Recio, 724 F.3d 117, 124 (1st Cir. 2013); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d at 260.

bad faith or in a vexatious manner.  After November 13, 2012, the record fails to show repeated refusals by CCS to pay the judgment for an extended time period in response to demands by Noble or other circumstances strongly indicative of bad faith or vexatious conduct.  See generally F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico, 563 F.3d at 8.  Although the aforementioned financial activities on the part of CCS are questionable, they do not justify an award of sanctions.  For example, the $500,000 transfer was to an account under the name of CCS Resources Inc. and CCS paid the judgment in full once Noble directed the Deputy Marshals to serve the writ of execution and levy on CCS's assets in Newton.  Noble fails to show that CCS's financial activities were part of a decisive pattern to avoid paying the final judgment.

In addition, CCS designated a Rule 30(b)(6) deponent who testified, albeit to a limited degree, about CCS's financial documents.  The fact that CCS objected to depositions of other entities was not unfounded.  CCS provided a number of the financial documents in response to the deposition subpoena duces tecum that delineated its assets to pay the judgment.  Having considered all of the circumstances, including the Massachusetts action, Noble fails to meet its burden to show that CCS and/or its counsel acted in bad faith, vexatiously, wantonly or for oppressive reasons.  Cf. Pan American Grain Manufacturing Co. v.

Puerto Rico Port Authority, 295 F.3d 108, 117 (1st Cir. 2002)
(upholding sanctions award under inherent power based on
misconduct of hiding identities of witnesses and inspectors,
attempting to secretly record opposing counsel's conversations
and engaging in physically violent behavior at deposition); Jones
v. Winnepesaukee Realty, 990 F.2d 1, 4-5 (1st Cir. 1993)
(uncooperative manner of the plaintiffs and filing patently
frivolous pleadings as well as pleadings "riddled with
demonstrably false allegations" justified lower court's finding
of bad faith and sanctions under its inherent power).

III.  CCS's Motion for Contempt and Sanctions

     CCS seeks a finding of civil contempt and a resulting
sanction requiring Noble to pay its attorneys' fees.  (Docket
Entry # 52).  According to CCS, Noble violated the protective
order in this case by appending confidential documents to Noble's
opposition to a motion CCS filed in the New Hampshire action to
stay the execution of the judgment in this case.  (Docket Entry #
52).

     The authority of this court to make a finding of civil
contempt is limited by statute.  See 28 U.S.C. § 636(e) ("section
636(e)").  This is not a consent proceeding or a misdemeanor
proceeding under 18 U.S.C. § 3401.  Accordingly, sections
636(e)(3), (4) and (6)(A), which by their terms only apply in a
consent case or a 18 U.S.C. § 3401 misdemeanor proceeding, do not

40

apply.  Section 636(e)(2) does not apply because CCS is not
seeking criminal contempt.  Section 636(e)(6)(B) therefore
provides the applicable scope of this court's authority.  <u>See</u>
<u>generally</u> <u>Martinez-Garcia v. Perez</u>, 2013 WL 5606366, *3 (S.D.Ga.
Oct. 11, 2013).

Section 636(e)(6)(B) sets out a procedure that allows this
court to certify the facts that constitute a civil contempt and
issue an order to appear before the district court to show cause
why the alleged contemnor "should not be adjudged in contempt."
28 U.S.C. § 636(e)(6).  It is then the province of the district
judge to hear the evidence and, if warranted, make a finding of
contempt and issue sanctions.  28 U.S.C. § 636(e)(6)(B); <u>see</u>
<u>Parenteau v. Prescott Unified School District</u>, 2010 WL 729101, *3
(D.Ariz. March 2, 2010) (absent "consent of all parties pursuant
to 28 U.S.C § 636(c), '[m]agistrate judges must refer contempt
proceedings stemming from out-of-court action/inaction to
district court judges'"); <u>see also</u> <u>Kiobel v. Millson</u>, 592 F.3d
78, 89 (2nd Cir. 2010) ("magistrate judges have limited power to
punish acts of contempt occurring in their presence, § 636(e)(2),
but must refer the matter to the district judge if the act does
not occur in the magistrate's presence, § 636(e)(6)(B)(ii)")
(Cabranes, J., concurring).

The facts are relatively straight forward.  On January 15,
2013, this court issued the protective order.  In pertinent part,

the protective order reads:

> All Confidential Information produced or exchanged in the
> course of this action shall be used solely for the purpose
> of *this action* and for no other purpose whatsoever, and
> shall not be disclosed to any person except in accordance
> with the terms hereof.

(Docket Entry # 38, ¶ 1) (emphasis added).  The order provides an
exception for disclosure to the court and its employees "whose
function requires them to have access" to the confidential
information.  (Docket Entry # 38, ¶ 4).

On February 27, 2012, after this court entered the
protective order, Noble registered the October 2012 final
judgment in the New Hampshire action.  (Docket Entry # 59-1).  On
March 4, 2013, CCS's counsel corresponded by email with Noble's
counsel about extending the protective order (Docket Entry # 38)
to the registration proceeding in New Hampshire.  (Docket Entry #
59-2).  CCS's counsel explained that he expected the registration
to result in the "disclosure of confidential information" during
"motion practice."  (Docket Entry # 59-2).  He therefore proposed
either jointly assenting to an adaptation of the existing
protective order or filing a motion to seal any confidential
information "when motion practice is commenced."  (Docket Entry #
59-2).  Because motion practice had not commenced in the New
Hampshire action, Noble's counsel rejected the suggestions.
(Docket Entry # 59-2).

On March 12, 2013, CCS delivered by hand to the Clerk of the

New Hampshire Superior Court (Rockingham County) the motion to stay the enforcement of the judgment in a sealed envelope and a motion to file the motion to stay under seal.  (Docket Entry # 59-3).  The motion to seal attached a copy of the protective order and noted its entry "in the underlying case."  (Docket Entry # 59-3).  The motion also requested that any opposition "be filed under seal."  (Docket Entry # 59-3).

By courier on March 19, 2013, Noble delivered the opposition and a cover letter to the Clerk.  (Docket Entry ## 53-1 & 59-4).  The opposition attached exhibits that included a number of documents designated as confidential information under the protective order.  The cover letter asked the Clerk in bold to place the opposition and the accompanying exhibits under seal in light of the protective order and included an envelope for the material.  CCS's motion to seal remained pending at the time Noble delivered the opposition to the Clerk.  On May 7, 2013, the court denied CCS's motion to stay and ordered it to pay Noble's reasonable attorneys' fees and costs associated with responding to the motion to stay.  (Docket Entry # 69-1).

In light of these facts, as certified by this court, this court declines to issue an order requiring Noble to appear before the district court to show cause why it should not be held in contempt.  In accordance with section 636(e)(6)(B), the merits of the motion remain with the district judge.

IV.  <u>CCS's Motion for Sanctions</u>

CCS moves for sanctions against Noble and its counsel under Rule 11.  (Docket Entry # 67).  The basis for the sanctions is the filing by Noble of the latter's motion for sanctions.  Noble maintains that the motion was well grounded in fact and in law and not filed to harass CCS.  (Docket Entry # 69).  The substance and merits of Noble's motion for sanctions is addressed at length in Roman numeral II.

As previously explained, "Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose."  <u>CQ Intern. Co., Inc. v. Rochem Intern., Inc., USA</u>, 659 F.3d at 60.  The fact that this court denied Noble's motion for sanctions does not, without more, support Rule 11 sanctions.  <u>See</u> <u>Id.</u> ("'mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions'").  The motion seeking sanctions under section 1927 and under this court's inherent power was well grounded in the law and in the facts.  Although this court drew certain facts in CCS's favor, the factual record provided a firm basis to find in Noble's favor.  For example, CCS's payment of the judgment on March 20, 2013, within hours of the arrival of the Deputy Marshals provides support for a finding that the November 13, 2012 statement by CCS's counsel was a falsehood even though this

court did not make such a finding.

In addition to the filings already discussed, CCS seeks sanctions because Noble filed a motion to seal (Docket Entry # 39) and represented, in error, that CCS assented to the motion. CCS also seeks sanctions because Noble filed a related "Statement of Counsel" (Docket Entry # 40) "without the required permission of the Court."[22]  (Docket Entry # 68).  Noble filed the statement to clarify the record with respect to whether CCS assented to the motion to seal.  A few days later, Noble withdrew the motion to seal.  Imposing sanctions for clarifying the record because of the movant's failure to seek leave of court does not serve the central purpose of Rule 11 to deter baseless filings.  See Id. at 62 ("Rule 11 should be used in appropriate cases to further its central purpose:  deter baseless filings").  The motion and the statement were well grounded in fact and the failure to procure leave of court was, at best, careless as opposed to culpably careless.  See Id. at 60 ("a showing of at least culpable carelessness is required before a violation of the Rule can be found"); Young v. City of Providence ex rel. Napolitano, 404 F.3d 33, 39 (1st Cir. 2005) ("lawyer who makes an inaccurate factual representation must, at the very least, be culpably careless to commit a violation").  Furthermore, the withdrawal of a motion,

_____

[22]  Although CCS does not cite Local Rule 7.1, this court assumes it is referring to the requirement of filing additional papers "only with leave of court."  LR. 7.1(b)(3).

45

like a denial of a motion, does not, without more, justify Rule 11 sanctions.  See CQ Intern. Co., Inc. v. Rochem Intern., Inc., USA, 659 F.3d at 60.  Noble did not file either the motion to seal or the statement of counsel for an improper purpose such as to cause needless delay or increase the cost of litigation to CCS.  Sanctions are not warranted.

CCS also argues that Noble completed the writ of execution to obtain money to which it was not entitled as evidenced by the fact that "Noble refunded more than $86,000 to CCS."  (Docket Entry # 68) (underlining omitted).  Noble's inclusion of the $58,148.75 in prejudgment interest in the proposed writ of execution was an oversight.  Noble represents and this court finds that Noble inadvertently included pre-award interest (the $44,125.79 in the third bullet point in the final arbitration award) even though this amount was already included in the $805,990.45 figure.  The oversight does not amount to culpable carelessness or otherwise provide a basis for Rule 11 sanctions.

CCS additionally seeks Rule 11 sanctions because Noble violated the protective order by disclosing the unredacted copies of CCS's confidential documents in the New Hampshire action.  The disclosures in the New Hampshire action are not "written motion[s]" or "other paper" presented to this court under Rule 11(b).  Likewise, an alleged violation of a court order is not the same as filing a frivolous "written motion" or "other paper"

46

or filing it for an improper purpose.  Alternatively, Noble has a legally and factually tenable argument that delivering the unredacted material to the Clerk did not violate the protective order.  Noble sought to register the final judgment in the New Hampshire action to collect and execute against CCS's assets in New Hampshire.  The protective order prohibits the use of confidential information except in "this action."  (Docket Entry # 38, ¶ 1).  A reasonable and non-frivolous interpretation of the order is that the New Hampshire action to register, enforce and collect upon the final judgment is a continuation or a part of "this action."

CCS's request for sanctions based upon Noble seeking leave to supplement its opposition to CCS's motion to quash is without merit.  The supplemental brief, which this court allowed, provided additional facts that Noble uncovered after it filed the opposition.  CCS's remaining arguments, including those based on Noble seeking sanctions under Rule 37, do not provide a basis for sanctions under Rule 11.

## CONCLUSION

To the extent set forth in this opinion, this court **RECOMMENDS**[23] that the motion to vacate the writ of execution

---

[23] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  See Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days

(Docket Entry # 51) be **ALLOWED** in part and **DENIED** in part and that, as of March 20, 2013, CCS owed Noble $805,990.45, postjudgment interest on that amount at the rate of .17% from October 16, 2012 to March 20, 2013, the Deputy Marshals' fee ($671) and the movers' fee ($864).  Noble's motion for sanctions (Docket Entry # 62) and CCS's motion for sanctions (Docket Entry # 67) are **DENIED**.  This court certifies the facts set out in Roman numeral III with respect to CCS's motion for civil contempt and sanctions (Docket Entry # 52).


                                                    /s/ Marianne B. Bowler
                                                **MARIANNE B. BOWLER**
                                                United States Magistrate Judge

---

after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.